# IN RE McNEIL.

PATENTS; CLAIMS; ANALOGOUS USES; ANTICIPATION.

1. The discovery of a new and analogous function for an old machine is not patentable.

2. Where a party obtains a patent on an apparatus, he is entitled to all the analogous uses of which his apparatus is capable.

3. Where an applicant's claims are for mechanism which, so far as described, does not differ in essential details from a patent referred to as anticipating his invention, he cannot successfully contend that the question is not whether certain limitations shall be put into his claims, but whether the patent referred to discloses a structure capable of securing the same function as his.

No. 382. Patent Appeals. Submitted November 21, 1906. Decided December 4, 1906.

HEARING on appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Charles L. Sturtevant* for the appellants.

*Mr. Fairfax Bayard* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal [by Chester McNeil and Charles L. Sturtevant] from a decision of the Commissioner of Patents rejecting all the claims, eight in number, of an application for patent.

The 2d, 5th, and 8th claims contain the substance of all, and are as follows:

"2. In a sewing machine, the combination with suitable stitch-forming mechanism, a work support, mechanism for feeding a plurality of thicknesses of fabric to the stitch-forming mechanism, a trimming mechanism, comprising two members, one operating above the work support and having its upper surface serving as a support for the upper layer of fabric and to separate the layers of fabric, and having its lower edge co-operating with the other trimming member, to sever the lower layer of fabric, said separating member of the trimmer deflecting the severed edge from the body portion of the fabric; substantially as described."

"5. In a sewing machine, the combination with suitable stitch-forming mechanism, a work support, mechanism for feeding a plurality of thicknesses of fabric to the stitch-forming mechanism, a trimming mechanism located below the work support, and comprising two members, one of which extends through the work support and above the same, said member having an upper edge serving as a support for the upper layer of fabric, and having its lower edge co-operating with the other member of the trimming device to sever the lower layer of fabric, the vertical rear portion of said upper member serving to deflect the free severed edge from the stitched portion of the fabrics; substantially as described."

"8. In a sewing machine, the combination with suitable stitch-forming mechanism, a work support, and mechanism for feeding a plurality of thicknesses of fabric to the stitch-forming mechanism, a trimming mechanism comprising two members, one of which has its upper surface serving as a support for the upper layer of fabric, and to separate the layers of fabric, and

the other of which co-operates with the first member to sever one of the layers of fabric; substantially as described."

The references forming the basis for the rejection of these claims are: Borton et al., March 28, 1882, No. 255,578; Willcox, June 28, 1887, No. 365,716. Other patents are referred to by the Examiner, but it is unnecessary to notice them here.

The subject-matter of appellants' alleged invention consists of a mechanism for stitching together two superposed layers of material and a co-acting mechanism for trimming or cutting one of the layers just beyond the seam. This combination, stitching mechanism and trimming mechanism, is not new in the art, but appellants contend that by a readjustment and modification of certain parts they have secured for the upper member of their trimmer, or cutting blade, a new function, and therefore the combination is patentable.

In the Willcox patent there is shown acting in conjunction a stitching mechanism and a trimming mechanism, the difference being that in the Wilcox patent the upper member of the cutting or trimming mechanism is stationary, the lower member being pivoted to co-operate therewith, but the upper member, although stationary, projects forward so that its pointed end penetrates between the superposed layers of fabric, and the member itself is mounted on the work support, which of necessity brings the cutting edge in the same plane with the work support, as in appellants' machine. In other words, appellants, so far as their claims disclose, have done nothing more than to reverse the parts of the Willcox patent. The similarity between the Borton & Willcox patent and appellants' claims is still more striking. We say appellants' "claims," because their drawings fail to disclose in unbroken lines a complete trimmer. Counsel in the argument at bar, however, contend that the structure of the Borton & Willcox presser foot was such as to preclude the possibility of the upper cutting member performing the function performed by appellants' upper cutting member. In the Borton & Willcox patent the presser foot is divided so that one side comes close to the needle hole, while the other is cut away sufficiently to enable the cutting blade to trim close

to the seam. In appellants' machine, counsel stated, the presser foot is not divided, and this results, it is contended, in giving the upper trimming blade free scope, and enables it to lift and support the upper layer of fabric while the lower is being trimmed, and thereby perform an important function of which the Borton & Willcox machine is not capable. But this contention rests upon a premise not sustained by the record. Appellants' claims make no mention of a presser foot, and we are not at liberty to assume a difference in structure when it is not clearly pointed out in the record. So far as this record discloses, a patent is sought on the discovery of a new and analogous function for an old machine. That such a discovery is not patentable has long since been determined. *Roberts* v. *Ryer,* 91 U. S. 150, 23 L. ed. 267; *Ansonia Brass & Copper Co.* v. *Electrical Supply Co.* 144 U. S. 11, 36 L. ed. 327, 12 Sup. Ct. Rep. 601; *C. & A. Potts & Co.* v. *Creager,* 155 U. S. 597 ,39 L. ed. 275, 15 Sup. Ct. Rep. 194.

The Examiner, whose decision was in turn sustained by the Examiners-in-Chief and the Commissioner, has this to say in construing the Borton & Willcox patent:

"Of these patents the one to Borton and Willcox (No. 255,- 578) shows a trimming mechanism which is essentially the same as that of McNeil and Sturtevant. The blade projecting above the bed plate is immediately in the rear of the needle and so arranged relative to the stitching mechanism as to trim (in the use described) the fabric parallel to the line of stitching. There appears to be no reason whatever why this machine could not be used to stitch a single-turn hem and trim the free or raw edge parallel to the line.of stitching precisely in the same manner as McNeil and Sturtevant's machine. Even if patentees did not have this use in mind at the time the patent was granted, it is a well-settled principle of law that an inventor of a machine or a mechanism is entitled to all the uses to which it may be applied without changing the machine or mechanism itself. Attention is called in this connection to the case of the *Western Electric Co.* v. *Sperry Electric Co.* 597 C. D. 1893, page 573, and to the decision of the present Commissioner in the case of

*Blue* v. *Power & Owens,* 101 Off. Gaz. 2076. In this latter decision, the Commissioner stated that, where a party obtains a patent on an apparatus, he is entitled to all the analogous uses of which his apparatus is capable. The Office cannot grant a patent on a device to one party for a particular use, and then grant a second patent on the same device to a second party who employs it for a different but analogous purpose."

It is contended, however, that "it is not a question of whether certain limitations should be put into the claims of appellants, but wholly a question of whether the Borton & Willcox patent discloses a structure capable of securing the same function as appellants'." The complete answer to this contention, it seems to us, lies in the fact that appellants' claims are for a mechanism which, so far as described, does not differ in essential details from the Borton & Willcox patent. The Examiner, in treating of this phase of the case, said: "If there is anything in applicants' construction which adapts it to perform a class of work not capable of being performed by the Borton machine, it must be due to a difference in structure, and certainly no real difference in structure over that shown by Borton is found in these claims."

Finding no error, the decision appealed from will be affirmed, and this opinion and the proceedings in this court will be certified to the Commissioner of Patents as required by law, and it is so ordered.                              *Affirmed.*