38 C.C.P.A. (Patents)

### In re VAN YZEREN.

### No. 5719.

United States Court of Customs and Patent Appeals.

Dec. 5, 1950.

Lee B. Kemon, Washington, D. C. (Donald E. Lane, Washington, D. C., of counsel) for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges.

JACKSON, Judge.

The claims of an application of appellant, serial No. 479,466, filed March 17, 1943 alleging "Improvement In Inductance Devices" were subject to the Dual Prosecution practice of the Patent Office.

Claims 11 and 12 were prosecuted in Division 10 and claims 13, 16, and 17 in Division 26. The claims were rejected by the respective examiners and their rejection was affirmed by the Board of Appeals of the United States Patent Office. No claims were allowed. From the decision of the board this appeal was taken.

Claims 11 and 13 are considered illustrative of the involved subject matter and read as follows:

"11. In a radio tuning system, the combination of two tunable circuits each comprising an inductance winding, a magnetic tuning core for each winding adapted upon movement relative to the winding to provide variable tuning of the respective circuits, means for moving said cores conjointly to thereby cause tracking in the tuning of said circuits, at least one conductive, non-magnetic member positioned adjacent an end of one of said windings, and means for adjustably positioning said non-magnetic member with respect to said winding to improve the tracking of said circuits in a predetermined portion of the tuning range of said system.

"13. An adjustable inductance tuning unit comprising a coil, a core of magnetic material arranged to be moved into and out of the coil in an axial direction thereof to vary its inductance between maximum and minimum values, a conductive, non-magnetic member positioned adjacent to one end of said coil, and means to adjust-

ably position said non-magnetic member with respect to said coil to adjust one of the above-mentioned inductance values of the coil."

All of the claims were rejected as unpatentable over the following cited references:

Wheeler, et al.   2,222,387   Nov. 19, 1940
Harvey            2,323,376   July  6, 1943.

The application concerns compensating means for variable inductances having magnetic cores for use in radio receiving sets. In the drawings an inductance coil is shown wound around a tubular form into which a coil of magnetic material is axially slideable for tuning purposes. The function of the core is to vary the inductance of the coil from a minimum to a maximum value. On the left end of the tube is positioned a non-magnetic conductive adjustable ring of a substance such as copper. It is said that movement of the ring permits adjustment of the minimum inductance value of the coil when the core is in an outward position. Another non-magnetic conductive member in the form of a disc is mounted at the end of the coil adjustably removed a little distance from the coil, or, instead of a disc, a ring of like material is adjustably mounted on the right end of the tube. When the core is positioned within the tube, movement of the disc or ring is said to permit adjustment of the maximum inductance of the coil. Apparently by means of the structure above-described it is possible to adjust two or more inductance coils independently when there are slightly differing coil characteristics so that an identical range of inductance values is obtained—minimum inductance when the cores are in outward position and maximum inductance when the cores are within the tube.

Claims 11 and 12 define the combination of two tunable circuits. Claim 13 is substantially similar to claims 11 and 12 but is applied only to a single coil. Claim 16 differs from claim 13 merely in the location of the conductive non-magnetic member at the end of the coil, and in claim 17 that member is located at the right end of the coil.

The patent to Wheeler et al. relates to "High Frequency Tunable System and Apparatus." It discloses a superheterodyne receiver comprising a radio frequency input network, an amplifier stage, a modulator and a local oscillator stage, which latter is coupled to the modulator for the purpose of injecting the oscillator frequencies into the modulator so that the intermediate frequency is sent through the conventional network. The tunable circuits are in "gang" position and designed for uni-control adjustment. A tubular member is shown in the drawings of the patent around which the inductance coil is wound. Within the tube at its right hand side is an annular magnetic core. Surrounding the coil is a tapered non-magnetic conductive shield member, the wide end of which, when in closed position, abuts the tube. That member is pivotably movable to the right of the structure. The teaching of the patent is that the inductance of the coil can be varied or tuned by movement of the non-magnetic conductive shield in an arcuate path to and from the whole exterior of the inductance coil. The maximum inductance value of the unit can only be changed by the adjustably fixed magnetic core within the coil. The minimum inductance value of the unit can be adjusted only by a stop member in screw form which limits the leftward travel of the non-magnetic tuning shield. There is no disclosure in the patent of a variable inductor in which both maximum and minimum inductance values may be adjusted. Neither is it shown that the magnetic core can be combined with the adjustable stop. The reference does not disclose the structure of an inductance unit such as is disclosed and claimed by appellant, nor is there shown in the patent a variable inductance through which the same result is obtained as that disclosed by appellant.

The Harvey reference relates to variable permeability tuning systems for radio signal receiving circuits and the like, wherein the tuning through predetermined frequency ranges is controlled by inductance variation in connection with fixed capacity elements. In the drawing of the patent there is shown

a superheterodyne receiver comprising a radio frequency amplifier stage and a mixer or converter stage which is coupled through the radio frequency transformer. One tunable circuit is coupled to the input means of one tube and another such circuit is connected up to the input grid of another tube. A local oscillator tunable circuit is coupled to the grid of the second mentioned tube. The inductances are tuned by movable magnetic core elements and end rings are disclosed of magnetic material which co-act with the magnetic iron core for adjusting the tuning and what is known as the "Q" of the circuits.

Claims 11 and 12 were rejected as being unpatentable over the Harvey or the Wheeler et al. references. The examiner observed that in the Harvey patent there is shown a combination of two tunable circuits each comprising an inductance winding, and a magnetic tuning core for each winding which, upon movement relative to each winding, provides variable tuning of the respective circuits together with means for moving the cores conjointly and thus providing for the "tracking" in the tuning of the circuits.

The examiner stated that a corresponding combination of elements, as found in the Wheeler et al. patent, is identified by coils in the two tunable circuits of one of the figures in which is represented the simultaneous adjustment of the movable core members by metal sleeves or, as shown in the structure of the Harvey patent, movable core members carried by the pivoted support wherein the metal sleeve is carried by an adjusting screw member.

The limitation in claim 11 reading "* * * at least one conductive, non-magnetic member positioned adjacent an end of one of the said windings, and means for adjustably positioning said non-magnetic member with respect to said winding to improve the tracking of said circuits in a predetermined portion of the tuning range of said system," the examiner found in the Wheeler et al. reference. He found further that the structure defined in claim 12 was likewise to be found there.

Claims 13, 16, and 17 were rejected by the examiner as unpatentable over the Wheeler et al. patent. He held that the limitation "core of magnetic material" in the claims which is moved "in an axial direction" by the screw member of the patent, varies the inductance of the coil and that the "conductive, non-magnetic member positioned adjacent to one end of said coil" is shown in the Wheeler et al. patent and known therein as a shield. He further held that the means to adjustably position said non-magnetic member with respect to the coil to adjust one of the above-mentioned inductance values thereof is met in the structure of the patent by the rotatable shaft to which the non-magnetic shield is pivoted or by adjustment of the said shaft.

In the opinion of the examiner it did not amount to invention to select either end of the coil for mounting the non-magnetic member and he pointed out that the tapered non-magnetic ring or shield of the Wheeler et al. patent is adjacent an end of the coil thereof when it has been arcuately moved from the coil.

The Board of Appeals affirmed all of the rejections made by the examiners.

Counsel for appellant in their brief contend that there is no disclosure in the prior art of an inductance coil tuned by a movable magnetic core and possessing adjustable non-magnetic conductive members at the ends of the coil by movement of which a determination is made of the minimum and maximum inductance values of the tunable circuit. Since there is no contention in the brief that any other elements of the claims are lacking in the prior art, as is pointed out in the brief of the Solicitor, it is deemed necessary to deal only with such contention.

It is old in the art to vary inductance by movement of a magnetic core into and out of a coil. Counsel for appellant concede this to be a fact. Therefore, it is not necessary to discuss that feature of the claims.

It is clear to us that the structure depicted in the Wheeler et al. patent shows that there are non-magnetic members which

are moved toward and away from the coil windings, so that their inductance is varied between minimum and maximum values for tuning purposes. It is also clear that the magnetic iron core of the patent structure adjusts the maximum inductance of the windings so as to cause "tracking."

The board agreed with the holding of the examiner that " * * * no invention would be involved in merely reversing the operation of the magnetic and conductive non-magnetic members * * * of Wheeler et al * * *." In that respect the board stated that counsel for appellant implied in their brief that the non-magnetic shield or ring in the structure of the Wheeler et al. patent is always coupled to the winding for the reason that it surrounds the turns of the winding and therefore the maximum inductance is altered when the core is moved into the coil. In the board's opinion the non-magnetic ring or shield of the patent may be adjustably positioned completely surrounding the magnetic coil or swung away therefrom in arcuate movement and when in the latter swung away position the circuits are "tracked" in a predetermined portion of the tuning range so as to be improved, as is said in the claims. The board stated as follows: "Since it is well known in the art that movement of a magnetic core into and out of a coil will vary its total inductance as shown by Harvey and that adjustment of a conductive non-magnetic member toward and from the end of the coil will vary its inductance and where the patent to Wheeler et al discloses the use of both an iron core and a non-magnetic conductive member, the iron core being used for adjusting the inductance in a predetermined portion of the tuning range to improve tracking of the circuits and the conductive member for adjusting the total inductance, no invention is seen in reversing the operation of the parts of Wheeler et al by adjustably positioning the conductive members at one end of the coils to improve tracking of the circuits in a predetermined portion of the tuning range and moving the iron cores to tune the circuits."

In support of his holding that reversal of parts without a change of function cannot impart patentability to a claim, the examiner cited the case of In re McNeil, 28 App. D.C. 461, which was cited with approval by this court in the case of In re Einstein, 46 F.2d 373, 18 C.C.P.A., Patents 885. This court held in the latter case that the mere transposition of parts of a grinding wheel causing axial movement forwardly and backwardly does not constitute invention.

Counsel for appellant urge that the holding of the board with respect to mere reversing the operations of the magnetic core and tuning shield in the Wheeler et al. patent is erroneous. In support of that argument they state that "Appellant's claims each recite that the adjustable non-magnetic conductive member is adjacent to one end of said coil, rather than surrounding the coil."

We are convinced from an examination of the drawing appearing in the Wheeler et al. patent that there is no substance to that argument. We have no doubt that the non-magnetic shield or ring shown in the device of the patent is "adjacent to one end of the coil."

In our opinion no new or unobvious result is shown in the application and claims of appellant. It is not argued that the final result of the operation of appellant's structure differs from the result obtained from the operation of the device of the Wheeler et al. patent. We think it is obvious to one skilled in the art to reverse the use of the parts shown in the device of that patent, if so desired.

For the reasons hereinbefore set out the decision of the Board of Appeals is affirmed.

Affirmed.